CHARLES E. SHUSTER, Respondent, *v.* NATIONAL SURETY COMPANY, Appellant.

(Argued February 17, 1931; decided April 7, 1931.)

*Sidney J. Loeb* and *Leon M. Prince* for appellant. The policy warranted that two watchmen would make hourly rounds and record same on a watchman's clock. That warranty plaintiff repeatedly breached. Those breaches were fatal to plaintiff's recovery, whether contributing to the loss or not, and whether the warranty was material or not. (*Weinberg & Holman, Inc.,* v. *P. W. Ins. Co.,* 254 N. Y. 387; *Marcus* v. *U. S. Casualty Co.,* 249 N. Y. 21; *Norwich Union Indemnity Co.* v. *Kobacker,* 31 Fed. Rep. [2d] 411; *Ripley* v. *Ætna Ins. Co.,* 30 N. Y. 136; *O' Neil* v. *Buffalo Fire Ins. Co.,* 3 N. Y. 122; *Mead* v. *Northwestern Ins. Co.,* 7 N. Y. 530; *King* v. *Tioga Co. P. F. R. Assn.,* 35 App. Div. 58; *Flower* v. *Ins. Co.,* 6 Cow. 673.) The policy was further breached in that on Saturday afternoons and all day on Sundays there was only one watchman and the clock was not punched at all. (*Rosenthal* v. *Am. Bonding Co.,* 207 N. Y. 162; *Mead* v. *Northwestern Ins. Co.,* 7 N. Y. 530; *Jennings* v. *Chenango Mut. Ins. Co.,* 2 Den. 75; *Cogswell* v. *Chubb,* 1 App. Div. 93; 157 N. Y. 709; *Ripley* v. *Ætna Ins. Co.,* 30 N. Y. 136; *Cary* v. *Home Ins. Co.,* 199 App. Div. 122; *First Nat. Bank* v. *Ins. Co.,* 50 N. Y. 45; *Feinstein* v. *Massachusetts Bonding & Ins. Co.,* 184 App. Div. 233; 230 N. Y. 621.) The warranty that two watchmen would be on duty within the premises at all times when the place was not regularly open for business, was violated in that there were not two watchmen when the place was closed at nights and on Saturday afternoons and on Sundays. (*Gifford* v. *Patterson,* 222 N. Y. 4.)

*Harold R. Medina, William F. McNulty* and *Alfred B. Nathan* for respondent. The assured did employ two watchmen, each of whom was on duty not only at the time of the burglary but at all other times when the premises were not regularly open for business. (*Smith* v. *Northwestern F. & M. Ins. Co.,* 246 N. Y. 349; *Hovey* v. *Ins. Co.,* 2 Duer, 554; *Au Sable Lumber Co.* v. *Detroit*

*Manufacturers Mut. F. Ins. Co.*, 89 Mich. 407; *Theriault* v. *California Ins. Co.*, 27 Ida. 476.) A fair and reasonable interpretation of the policy did not require each of the two watchmen employed by the assured to make hourly rounds together and each to punch the same clock. (*Gerka* v. *Fidelity & Casualty Co.*, 251 N. Y. 51; *Bushey & Sons* v. *American Ins. Co.*, 237 N. Y. 24; *Silverstein* v. *Commercial Casualty Ins. Co.*, 237 N. Y. 391; *Paskusz* v. *Philadelphia Casualty Co.*, 213 N. Y. 22; *Michael* v. *Prussian Nat. Ins. Co.*, 171 N. Y. 25; *Janneck* v. *Metropolitan Life Ins. Co.*, 162 N. Y. 574; *Zivitz* v. *Maryland Casualty Co.*, 192 App. Div. 83; *Finucane* v. *Standard Accident Ins. Co.*, 184 App. Div. 280; *Bird* v. *St. Paul Fire & Marine Ins. Co.*, 224 N. Y. 47; *Miller* v. *Phœnix Mutual Life Ins. Co.*, 107 N. Y. 292; *Higgins* v. *Phœnix Mutual Life Ins. Co.*, 74 N. Y. 6; *McCulloch* v. *Norwood*, 58 N. Y. 562; *Dilleber* v. *Home Life Ins. Co.*, 69 N. Y. 256; *Linzee* v. *Frankfort General Ins. Co.*, 162 App. Div. 282; *Parker* v. *Otsego County Fire Ins. Co.*, 47 App. Div. 204.)

KELLOGG, J. On the morning of May 12, 1924, at about two o'clock, the plant of Shuster, Kloorfain & Co., Inc., a corporation which conducted a fur-dressing business, was forcibly entered by burglars who removed therefrom valuable furs which had been intrusted to the corporation by its customers. In June, 1923, the corporation had taken out a policy of insurance, issued by the defendant, insuring the corporation for twelve months against a loss of merchandise, owned by it or held in trust for customers, through a burglary of the plant. Subsequently to May 12, 1924, Shuster, Kloorfain & Co., Inc., assigned its cause of action against the defendant to this plaintiff, who thereupon instituted this action upon the policy to recover damages for the loss sustained.

The policy contained this clause: " The following statements, numbered 1–12 inclusive, are hereby made a

part of the Policy and are warranted by the assured to be true." There followed, among others, two statements numbered 8 and 9, which are pertinent to the issue. Statement 8 reads: "A private watchman employed exclusively by the assured will be on duty within the premises at all times when the premises are not regularly open for business, while this Policy is in force." At the foot of this statement there appeared a typewritten clause of which the assured was the author, reading " yes — two watchmen." Statement 9 reads as follows: " The private watchman described in Item 8 will make hourly rounds and record same on the watchman's clock, or will signal an outside central station at least hourly * * *." At the foot of this statement the assured wrote in typewriting, " yes, both watchmen on watchman's clock."

The proof is conclusive that throughout the term of the policy, prior to the burglary, two watchmen attended at the plant each night from five P. M. to seven-thirty A. M., " when the premises " were " not regularly open for business." The proof is equally clear that both watchmen did not make hourly rounds; that both did not hourly punch the clock. Indeed, plaintiff's counsel says in his brief, " Each night the clock was taken around hourly, sometimes by the two watchmen who went together, but more often by one or the other who went alone, to the various key stations situated in the different parts of the building or factory and punched."

In effect the insurer had asked the assured (1) whether " a private watchman " would at all times be on duty when the premises were not regularly open for business, and (2) whether such a " private watchman " would make hourly rounds and record them on a watchman's clock. To each of these questions the assured answered " yes." In so doing it made the only responses called for, furnished the only promises demanded, and integrated the only statements warranted to be true. That it

added to its first answer "two watchmen," and to its second "both watchmen on watchman's clock" is immaterial. These statements were irresponsive and gratuitous assertions not called for by the insurer. They constituted no part of the statements warranted and, as unrequested promises, no part of the contract made. We think, therefore, that there was no warranty that two watchmen would make hourly rounds within the premises and record the same. This view finds support in *Norwich Union Indemnity Co.* v. *Kobacker & Sons Co.* (31 Fed. Rep. [2d] 411) and *Buell* v. *Connecticut Mutual Life Ins. Co.* (4 Fed. Cas. 590).

As we have already shown, statement 8 provides that a watchman will be on duty "at all times when the premises are not regularly open for business;" statement 9 that the watchman will "make hourly rounds and record same on watchman's clock." No watchman made or recorded rounds on Saturday afternoons or on Sundays during the day time. A watchman named Schmidt came on duty Saturdays at twelve noon; locked up the building when the workmen left; and remained until the night watchmen arrived at five o'clock. On Sundays he attended at the building from eight A. M. to five P. M., but made no rounds and never punched the clock, either on a Saturday or a Sunday. Ordinarily the assured employed between fifty and sixty workmen. On Saturday afternoons and Sundays these men were not present at the plant. True, at these times three officers of the assured and a foreman were present from twelve to five on Saturdays and from eight to five on Sundays and performed manual labor in dressing and storing away furs. However, this hardly presents the picture of a factory then "regularly open for business." Contrast the condition of the building on a week day with its condition on a Sunday or Saturday afternoon; on the one occasion teeming with laborers busily at work; on the other, save for the presence of four officers, empty and

idle. It would seem that the insurer, as well as the assured, had this contrast in mind when the policy was drawn by the former and accepted by the latter. The presence of fifty laborers on a week day would safeguard against burglary sufficiently well without the attendance of a watchman; the presence on Sundays and Saturday afternoons of not more than four officers might well call for the attendance of a watchman. This was certainly the view of the assured, for upon the occasions when the full labor force was in attendance no day watchman was provided, whereas on a Saturday and a Sunday, when the regular force was absent, such a watchman was furnished. Clearly, also, it was the thought of the insurer that no watchman was required during the hours when the labor gang was regularly employed; that he was needed on Saturdays and Sundays when that force was absent. It was for this reason, we think, that the insurer made provision that a watchman must be on duty, make hourly rounds and record the same, " at all times when the premises are not regularly open for business." We think, therefore, that the assured breached its warranty in not providing a watchman to make hourly rounds on Sundays and Saturday afternoons.

Even conceding, for the sake of the argument, that the building on Sundays and Saturday afternoons, though not open for regular business, was " regularly open for business," the assured meets another obstacle to recovery. The last records of rounds, punched by a watchman on Sunday mornings, were made at six o'clock. No rounds were made after six o'clock; no record of a round at seven or eight was made. Yet, concededly, none of the officers arrived at the plant on Sundays earlier than eight o'clock. Thus invariably, every Sunday morning, two hours elapsed without the making or the recording of a round, although, concededly, during those two hours the premises were not " open for business." It thus appears that the warranty of the assured that hourly

rounds would be made and recorded, when the plant was idle, was broken. Moreover, the omission was not inadvertent, casual or occasional; it was intentional; it consistently occurred at regular intervals. It is not possible to hold that the assured did not thereby break its warranty and sacrifice its policy of insurance.

The judgment of the Appellate Division should be reversed and that of the Trial Term, dismissing the complaint, affirmed, with costs in the Appellate Division and in this court.

CARDOZO, Ch. J., CRANE, LEHMAN and O'BRIEN, JJ., concur; POUND and HUBBS, JJ., not sitting.

Judgment accordingly.